UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

James Levesque

   v.                                    Civil No. 18-cv-420-LM
                                         Opinion No. 2019 DNH 080
U.S. Social Security Commission,
Acting Commissioner

**O R D E R**

James Levesque seeks judicial review of the decision of the Acting Commissioner of the Social Security Administration, denying in part his application for disability insurance benefits and supplemental social security income. Levesque moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. For the reasons discussed below, the court denies the Acting Commissioner's motion to affirm and grants Levesque's motion to reverse.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by

substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal citation omitted). "Rather, the court must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id.

In determining whether a claimant is disabled, the Administrative Law Judge ("ALJ") follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).[1] The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether he has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

---

[1] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

2

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite his limitations caused by impairments, id. § 404.1545(a)(1), and his past relevant work, id. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, where the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 404.1520(a)(4)(v).

**BACKGROUND**

A detailed factual background can be found in Levesque's statement of facts (doc. no. 10-1) and the Acting Commissioner's statement of facts (doc. no. 12). The court provides a brief summary of the case here.

I.  Procedural Background

On November 29, 2010, Levesque filed an application for disability insurance benefits and supplemental social security income ("SSI"), alleging a disability onset date of November 15, 2010, when he was 47 years old. After Levesque's claims were

denied at the initial level, he requested a hearing in front of an ALJ. On March 13, 2012, the ALJ held a video hearing, and he denied Levesque's claims for benefits in a written decision dated April 11, 2012. On May 24, 2013, the Appeals Council denied Levesque's request for review, making the ALJ's decision the Acting Commissioner's final decision. Levesque brought an action in federal court challenging that decision ("federal court action"). See Levesque v. U.S. Soc. Sec. Admin., Acting Comm'r, 13-cv-298-JL (D.N.H. June 28, 2013).

On March 19, 2014, while the federal court action was pending, Levesque filed another claim for SSI benefits. Levesque's second claim was approved at the initial level and affirmed by the Appeals Council. Levesque was awarded SSI benefits effective March 19, 2014, the date of his second application.

On September 11, 2014, the district court remanded the federal court action, which pertained to Levesque's first claim for benefits, to the Acting Commissioner for further administrative proceedings. See Levesque v. Colvin, No. 13-CV-298-JL, 2014 WL 4531743 (D.N.H. Sept. 11, 2014). The district court held that the ALJ's decision was not supported by substantial evidence because there was no RFC assessment by a medical expert in the record. Id. at *1-2. The court stated that in light of those circumstances, "the ALJ should have

either (1) recontacted Levesque's treating sources for additional information concerning the limitations imposed by his impairments; or (2) ordered him to undergo a consultative evaluation with a medical professional." Id. at *2.

On June 18, 2015, a different ALJ held a hearing on Levesque's first claim for benefits that had been remanded by the district court. Before the hearing, Levesque amended his alleged disability onset date to December 31, 2010. On July 10, 2015, the ALJ issued a partially favorable decision. He found that Levesque became disabled on May 14, 2013, the day after his 50th birthday, and was entitled to benefits as of that date. The ALJ found that Levesque was not disabled prior to that date.

The Appeals Council remanded the portion of the July 10, 2015 decision that denied Levesque benefits prior to May 14, 2013. The Appeals Council stated:

> The hearing decision does not adequately evaluate the treating source opinions of Joseph Lowne, M.D., Jeffrey Wiley, M.D., and John Grohman, M.D. Both treating source opinions of Dr. Lowne and Dr. Wiley (Exhibits 27F and 29F) are identified in the hearing decision (Decision, pages 8-9), but are given only some weight to the extent that they find the claimant is limited in his ability to work following the established onset date and that their opinions reflect limitations after the established onset date. However, this reasoning does not adequately explain why Dr. Lowne's opinion that the claimant's limitations have existed since November 15, 2010, was not accepted (Exhibit 27F, page I). A March 7, 2011 opinion from Dr. Grohman (Exhibit I IF, page 4) that the claimant was disabled from his knee and heart impairments is neither cited nor addressed in the

5

> hearing decision. Further evaluation of the treating source opinions in accordance with 20 CFR 404.1527, 416.927 and Social Security Rulings 96-2p, 96-5p and 06-3p is necessary.

Admin. Rec. at 700. The Appeals Council directed the ALJ, upon remand, to: (1) recontact Levesque's treating sources and/or obtain evidence from a medical expert to clarify the nature, severity, and limiting effects of Levesque's impairments; (2) give further consideration to the opinions of Drs. Lowne, Wiley, and Grobman and explain the reasons for the weight given to their opinions; (3) give further consideration to Levesque's maximum RFC during the relevant period prior to March 14, 2013, and provide appropriate rationale with specific references to the evidence of record to support the assessed limitations; and (4) obtain supplemental evidence from a vocational expert if necessary.

On July 13, 2017, the ALJ held another hearing on Levesque's first claim for benefits. Levesque, who was represented by an attorney, appeared and testified. A non-examining impartial medical expert, Dr. John Kwock,[2] and a vocational expert, Elizabeth Laflamme, also appeared and testified.

---

[2] In the transcript of Dr. Kwock's testimony, his name is written as Dr. "Clough." Admin. Rec. at 580. Because the ALJ's decision and the parties' filings refer to the impartial medical expert as Dr. Kwock, the court assumes that the use of Dr. "Clough" in the transcript is a typographical error.

II.  The ALJ's Decision

On August 8, 2017, the ALJ issued an unfavorable decision. He found that Levesque had the following severe impairments: degenerative disc disease, osteoarthritis of the knees and hips, obesity, and coronary artery disease.  The ALJ found that from December 31, 2010 through May 13, 2013, Levesque had the residual functional capacity to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could stand and walk for 2 hours and sit for 8 hours.  He should have been able to extend his legs on a small footstool, should have avoided all ladders, ropes and scaffolds and he could occasionally climb stairs.  He could frequently balance, occasionally stoop and kneel, but should have avoided all crouching and crawling.

Admin. Rec. at 546.

As directed by the Appeals Council, the ALJ obtained medical opinion evidence regarding the nature, severity, and limiting effects of Levesque's impairments from a medical expert, Dr. Kwock.  The ALJ also gave further consideration to the opinions of Drs. Lowne, Wiley, and Grobman.

The ALJ gave the opinions of Drs. Lowne, Wiley, and Grobman little weight.  He gave Dr. Kwock's opinion the "most weight." Admin. Rec. at 550.

Relying on the vocational expert's testimony, the ALJ found at Step Five that, prior to May 14, 2013, Levesque was capable

7

of performing jobs that exist in the national economy, including telephone information clerk, credit card application clerk, and callout operator.  The ALJ concluded that, therefore, Levesque was not disabled from his alleged onset date through May 13, 2013.

The Appeals Council denied Levesque's request for review, making the ALJ's decision the Acting Commissioner's final decision.  This action followed.

**DISCUSSION**

Levesque contends that the ALJ erred in his evaluation of the medical opinion evidence.  He also argues that the ALJ improperly discounted his subjective complaints.  As a result, Levesque contends, the record lacks substantial evidence to support the ALJ's RFC assessment.  The Acting Commissioner argues that the ALJ properly weighed and considered the opinion evidence and Levesque's complaints.

I.  <u>Medical Opinion Evidence</u>

Levesque contends that the ALJ erred in his evaluation of the opinions of his treating physician, Dr. Lowne, and the medical expert, Dr. Kwock.  Specifically, he argues that the ALJ erroneously gave little weight to Dr. Lowne's opinion and the most weight to Dr. Kwock's opinion.

8

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record." Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; 20 C.F.R. § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

A treating medical source's opinion about a claimant's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2). An ALJ must give "good reasons" for the weight given to a treating source's medical opinion. Id. "Those reasons must offer a rationale that could be accepted by a reasonable mind." Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-cv-486-

9

PB, 2018 WL 301090, at *10 (D.N.H. Jan. 5, 2018). If the ALJ satisfies that standard, the court will uphold the decision to discount a treating source's opinion. Id.

On June 8, 2015, Dr. Lowne completed a Medical Source Statement. In his statement, Dr. Lowne noted that Levesque had pain in his lower back, hips, and knees, and opined that the pain would interfere with Levesque's ability to perform even simple tasks up to 66% of the workday. See Admin. Rec. at 1320-22. He also opined that Levesque would be limited to standing or sitting for just two hours in an eight-hour workday and that his legs would need to be elevated above his hips whenever he is sitting. Id. at 1321-22. In response to the direction to "Identify the clinical findings and objective signs," Dr. Lowne wrote "Advanced degenerative changes on X-rays." Id. at 1320.

Question 8a of the statement asked: "Have the impairments you assessed in this questionnaire existed since the claimant's alleged onset date of 11/15/2010?"[3] Dr. Lowne checked off "yes." Id. Question 8b asked: "If you do not feel the claimant's limitations you have assessed have existence since 11/15/2010,

---

[3] As mentioned above, shortly before the June 18, 2015 hearing, Levesque amended his original disability onset date of November 15, 2010 to December 31, 2010. The fact that Dr. Lowne's opinion relates back to November 15, 2010 has no bearing on the court's analysis, but the court notes it for the sake of clarity.

10

on what date do you feel these limitations you have assessed began?" Id. at 1321. Dr. Lowne left the answer blank.

The ALJ addressed Dr. Lowne's opinion in his decision and gave it little weight for several reasons. First, the ALJ noted that Dr. Lowne did not start treating Levesque until January 2014, several months after the period under consideration for purposes of the decision (December 31, 2010 through May 13, 2013). Second, the ALJ found it significant that Dr. Lowne provided no response to the question of when Levesque's limitations began. Finally, the ALJ found that Dr. Lowne's opinion was not fully supported by objective clinical findings. Specifically, the ALJ noted that Dr. Lowne cited advanced degenerative changes on Levesque's X-rays to support his opinion that Levesque was limited by hip and knee pain. The ALJ further noted that Dr. Kwock testified that the record did not include sufficient X-ray evidence during the relevant period to show the changes Dr. Lowne cited.

Levesque challenges the ALJ's evaluation of Dr. Lowne's opinion on two grounds. First, Levesque argues that the ALJ erroneously interpreted Dr. Lowne's opinion as to when Levesque's assessed limitations began. Second, Levesque contends that the ALJ incorrectly determined that Dr. Lowne's opinion was not fully supported by objective clinical findings.

A.  <u>Beginning of Levesque's Assessed Limitations</u>

Questions 8a and 8b of Dr. Lowne's medical source statement provide:

> 8. a. Have the impairments you assessed in this questionnaire existed since the claimant's alleged onset date of 11/15/2010?   ☒ Yes   ___ No
>
> *but only became a patient of mine on 1/23/2014*
>
> b. If you do not feel the claimant's limitations you have assessed have existed since 11/15/2010, on what date do you feel these limitations you have assessed began?
> _____.

Admin. Rec. at 1320-21. In addressing this portion of Dr. Lowne's opinion, the ALJ stated:

> In addition, when specifically asked if the assessed limitations began on the originally alleged onset of disability of November 15, 2010, Dr. Lowne provided no response. Given the claimant's amendment of the alleged onset of disability to December 31, 2010, noted at the beginning of this decision, the question itself was inaccurate. Further, the question is a [sic] poorly worded; it supposes that Dr. Lowne agreed with the November 15, 2010 alleged onset of disability. Note however that he still left it blank.

<u>Id.</u> at 549.

Levesque argues that the ALJ mischaracterized Dr. Lowne's opinion. He contends that a fair reading of the response to Question 8 as a whole is that Dr. Lowne opined that Levesque's impairments and limitations had existed since November 15, 2010.

The Acting Commissioner disagrees. She argues that Levesque's interpretation of Dr. Lowne's opinion conflates the terms "impairments" and "limitations," which denote different

12

connotations.[4] She contends that the only reasonable interpretation of Dr. Lowne's responses to Questions 8a and 8b is that he opined that Levesque's <u>impairments</u> had existed since November 2010, but that Dr. Lowne did not offer an opinion as to how long Levesque's <u>limitations</u> had existed.

The court finds the Acting Commissioner's arguments unpersuasive. Questions 8a and 8b in the medical source statement are not artfully drafted. When read together, however, the questions appear to ask whether Levesque's diagnoses and symptoms have existed since November 15, 2010 (Question 8a) and, if not, when did they begin (Question 8b). A reasonable interpretation favors Levesque's explanation.

Even when Question 8b is read in isolation as the Acting Commissioner urges, however, the Acting Commissioner's and the ALJ's reasoning regarding that question and Dr. Lowne's response thereto is unpersuasive. Question 8b asks for a response <u>only</u> if Dr. Lowne does not believe that Levesque's limitations existed since November 15, 2010. In other words, the only fair interpretation of Dr. Lowne's lack of a response to Question 8b is that he <u>does</u> believe that Levesque's limitations existed since November 15, 2010.

---

[4] It is true, as the Acting Commissioner notes, that impairments and limitations are not synonymous under Social Security regulations. <u>See</u>, e.g., 20 C.F.R. § 404.1521.

13

The ALJ's reasoning is particularly problematic because the Appeals Council specifically stated in its remand order that the ALJ's prior decision "does not adequately explain why Dr. Lowne's opinion that the claimant's limitations have existed since November 15, 2010, was not accepted." Admin. Rec. at 700. Considering the Appeals Council's directive, the ALJ's rationale for discounting Dr. Lowne's opinion as to when Levesque's assessed limitations began is inadequate.

B. Objective Clinical Findings

The Acting Commissioner argues that even if the ALJ erred in interpreting Dr. Lowne's response to Question 8, any error is harmless because the ALJ found that Dr. Lowne's opinion was not supported by objective clinical findings. Levesque contends that Dr. Lowne properly supported his opinion.

Dr. Lowne identified "Advanced degenerative changes on X-rays" as clinical findings and objective signs of Levesque's impairments and limitations. The ALJ addressed that portion of the opinion in his decision:

> Further, the opinion articulated by Dr. Lowne is not fully supported by objective clinical findings. Dr. Lowne cited advanced generative change on x-ray to support his opinion that the claimant was limited by hip and knee pain. However, the medical expert Dr. Kwock testified that the record <u>did not include sufficient x-ray evidence during the period under review</u> that would explain the claimant's subjective complaints. Although the claimant representative

14

pointed to narrative evidence of hip and knee x-rays,[5] the medical expert discounted the narrative as a paraphrase of x-ray evidence made after the period of time in question (Exhibit 19F, pp. 2-3). As such, the narrative as it was worded, was unclear [if] it was discussing objective findings predating the date last insured and therefore was not as reliable as the x-ray itself in manifesting objective laboratory findings that would explain the claimant's symptoms of severe hip and knee pain.

Admin. Rec. at 549.

During his examination of Dr. Kwock, Levesque's attorney pointed to a March 3, 2014 treatment note by Dr. Derek Jenkins, which discussed an undated X-ray that showed "advanced severe degenerative arthrosis of the bilateral hips." Admin. Rec. at 1037. Dr. Kwock responded as follow:

> Yes, I see that. Says X-rays available for (inaudible) pelvis, cross table laterals of (inaudible) which do show advanced, severe degenerative (inaudible) actually of bilateral hips.
>
> I have issues with that type of X-ray reports though. It is a so-called report within the body of a progress note and when you do it that way it's either a paraphrase of what was said on the Radiology report, you know, and/or and nowadays it could be a cut and paste, you know, kind of thing.
>
> But then again, you can also cut and paste the parts you like and leave out the parts you don't. And so I am (inaudible) this X-ray mentioned does not have a date. We don't know when this X-ray was taken.
>
> And, so I have trouble depending -- using information such as this. I much would prefer to see that X-ray report that way I know what the radiologist

---

[5] As explained further below, the ALJ is referring here to Levesque's attorney's examination of Dr. Kwock during the hearing.

15

> has said and I know when it was taken. But I can't heavily depend on information such as this one here.

Admin. Rec. at 587-88.

Dr. Kwock later testified:

> Yeah, okay, yeah, I'm pretty sure [Levesque] probably had arthritis of the hips. But for the purpose of me stating that I have evidence in this record that will substantiate severe arthritis of either hip during the period of time that we are speaking, this sentence in this progress note will not do that for me.

Id. at 589. Levesque's attorney then asked if Dr. Kwock agreed that severe arthritis of the hips, as purportedly showed by the x-rays, is the type of ailment that would not develop quickly but would instead develop over a period longer than "a couple of months." Id. Dr. Kwock replied that he agreed "that it doesn't just occur in a couple of weeks, that sort of thing." Id.

"Because Social Security proceedings are not adversarial in nature, the Secretary had a duty to develop an adequate record from which a reasonable conclusion can be drawn." Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). If the ALJ fails to fill certain "evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate." King v. Colvin, 128 F. Supp. 3d 421, 437 (D. Mass. 2015). "One can demonstrate such prejudice by 'showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.'"

Id. at 437-38 (quoting Gaeta v. Barnhart, No. CIV.A. 06-10500-DPW, 2009 WL 2487862, at *5 (D. Mass. Aug. 13, 2009)).

Here, the ALJ relied on Dr. Kwock's testimony regarding the X-rays to discount Dr. Lowne's opinion. But Dr. Kwock: (1) did not have access to the X-rays, (2) testified that he felt sure that Levesque had arthritis of the hips, and (3) agreed that if the X-rays, which were taken prior to March 3, 2014, showed advanced degenerative arthritis of the hips, then the condition had likely existed for a substantial period of time.

The X-rays were not in the record evidence. In light of Dr. Lowne's reliance on the results of the X-rays to support his opinion and Dr. Kwock's testimony, the ALJ should have sought a copy of the X-rays in order to develop an adequate record. It does not appear that he did so.

The failure to pursue this evidence was prejudicial to Levesque's case. Dr. Lowne relied on the X-rays and the absence of the X-rays was part of the reason the ALJ rejected Dr. Lowne's opinion. Therefore, "the inclusion of such records may have led to a different decision." King, 128 F. Supp. 3d at 438.

The ALJ's failure to develop an adequate record is grounds for reversing the Acting Commissioner's decision pursuant to

sentence four of Section 205(g).[6]  The case will be remanded for further proceedings.

II. Remaining Issues

In light of the foregoing, the court need not address Levesque's remaining claims of error. The ALJ may address those issues, if necessary, upon remand.

**CONCLUSION**

For the foregoing reasons, the plaintiff's motion to reverse (doc. no. 10) is granted, and the Acting Commissioner's motion to affirm (doc. no. 11) is denied.  The clerk of court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 7, 2019

cc:  Counsel of Record

---

[6] Because the court finds that remand is appropriate, the court need not address Levesque's challenge to the weight the ALJ afforded to Dr. Kwock's opinion.